OPINION
{¶ 1} Appellant, Gregory Bush ("Bush"), was charged with the following offenses: (1) rape, a felony of the first degree in violation of R.C. 2907.02, (2) kidnapping, a felony of the second degree in violation of R.C. 2905.01, (3) intimidation of a crime victim, a felony of the third degree in violation of R.C.2921.04, (4) intimidation of a crime witness, a felony of the third degree in violation of R.C. 2921.04(B), and (5) unlawful sexual conduct with a minor, a felony of the third degree in violation of R.C. 2921.04.[1] A jury found Bush guilty on all charges except the intimidation of a crime witness. Bush was declared a sexual predator pursuant to R.C. 2950.09(B)(2), requiring registration as a sex offender for life. After merger of the guilty verdicts for rape, kidnapping and unlawful sexual conduct with a minor, Bush was sentenced as follows: nine years imprisonment on the rape conviction and two years imprisonment for intimidation of a crime victim to run consecutively.[2]
Bush timely appeals the convictions and sentences. As a result of the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, the statute utilized by the trial court in rendering the consecutive portion of Bush's sentence has been declared unconstitutional and therefore we must vacate that portion of Bush's sentence and remand for resentencing consistent with Foster. As to Bush's remaining assignments of error which are unrelated to sentencing, we affirm.
 {¶ 2} On the night of June 25, 2004, the thirteen-year-old victim was staying at the residence of Brenda McGlothin. The victim frequently stayed at McGlothin's home and considered her his "best friend" despite a significant age difference. The victim and McGlothin met at Dairy Mart where McGlothin worked. The victim and McGlothin immediately became friends and the victim began to work with McGlothin assisting her in the stocking and cleaning duties at the store. The victim met Bush for the first time formally on June 25, 2004.[3] Bush arrived after 11:00 p.m. at the McGlothin home. While McGlothin and two companions were upstairs, Bush asked the victim if he would accompany him to Burger King, his place of employment, to assist in closing the restaurant. Bush promised to give the victim an order of chicken tenders as a form of payment for his assistance. Despite having met Bush for the first time that night, the victim agreed and left with Bush.
 {¶ 3} Bush drove the victim to Burger King, approximately a three-minute drive from the McGlothin residence. The victim entered the Burger King, used the restroom and returned to the car. After closing the restaurant, Bush returned to the vehicle with the promised chicken tenders. The victim proceeded to eat a few chicken tenders as the two began the short drive back to McGlothin's. When Bush reached a traffic light, he turned to the victim and said: "Suck my dick or I will kill you." The victim described Bush's demeanor as "mad."
 {¶ 4} The victim testified Bush then "kind of lifted up his self" and pulled down his pants while he was driving toward a local elementary school. Bush pushed the victim's head down onto his penis and "all I could do is go up and down," stated the victim. The victim felt scared and gave Bush oral sex as Bush continued to drive.
 {¶ 5} The two returned to McGlothin's residence. Both entered the home and the victim retreated to the front porch to smoke a cigarette. Bush followed the victim onto the porch. According to the victim, Bush "pulled his shorts down to his knees" and "tried to put his penis in my butt." The victim walked to another house of an adult friend named Mary. Bush attempted to follow the victim. When the victim returned to the McGlothin home, Bush was not present.[4]
 {¶ 6} The victim did not report the incidents with Bush to anyone until on or about the 3rd or 4th of July when he told McGlothin. The incident was reported to the victim's mother. The Windham police were informed and began an investigation.
 {¶ 7} On or about July 8, 2004, the victim was assisting McGlothin at the local Dairy Mart pursuant to his usual routine. Bush and an individual named "Jazz" visited the Dairy Mart. The victim felt threatened during a conversation with Jazz and Bush outside the Dairy Mart. Bush pinched the victim's face and advised him to "get this stuff straightened out." This incident was also reported to the police and an investigation commenced.
 {¶ 8} As a result of both investigations, Bush was eventually charged with rape, kidnapping, unlawful sexual conduct with a minor, intimidation of a witness and intimidation of a crime victim. A jury trial was held September 28 and September 29, 2004. Bush was found guilty as previously stated.
 {¶ 9} Bush sets forth the following assignments of error on appeal:
 {¶ 10} "[1] The conviction for rape is not supported by sufficient evidence and is against the manifest weight of the evidence due to the lack of corroborating evidence and the contradictory testimony of the thirteen year-old alleged victim.
 {¶ 11} "[2] The convictions for kidnapping and unlawful sexual contact with a minor are not supported by sufficient evidence and is [sic] the manifest weight of the due [sic] to [sic] the [sic] lack of corroborating evidence and the uncertain testimony of the alleged victim.
 {¶ 12} "[3] The conviction for intimidation of a crime witness was improperly submitted to the jury because the trial court stated that the charge would be disposed of pursuant to Criminal Rule 29. The conviction is also not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 13} "[4] The trial court failed to comply with Ohio's felony sentencing laws by sentencing Defendant to a nine-year sentence and a two-year consecutive sentence."
 {¶ 14} We will address Bush's assignments of error in order.
 {¶ 15} Bush's first assignment of error requires a two-part analysis. First, Bush alleges that the conviction for rape is not supported by sufficient evidence. "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."State v. Thompkins (1997), 78 Ohio St.3d 380, 386. A conviction based on insufficient evidence would essentially deny the defendant due process. See, Thompkins at 386.
 {¶ 16} The heart of a sufficiency allegation is that the prosecution failed to present evidence for each element of its claim. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, 13. A reviewing court must interpret the evidence in a light most favorable to the prosecution. Id. The proper question to ask is whether the evidence presented, "`* * * if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" State v. Ramirez (1994), 98 Ohio App.3d 388, 393, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Applying this standard to the evidence presented in this case, we believe the evidence was sufficient to establish the elements of rape. The applicable provision of R.C. 2907.02
provides:
 {¶ 17} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 18} The victim testified that Bush forced his head onto his penis. The victim also testified that Bush threatened the victim: "Suck my dick or I will kill you." The victim felt scared. These are the essential elements of rape according to the statutory definition.
 {¶ 19} Bush admitted to being in the car with the victim to the police but denied the allegations of rape. Viewing the victim's testimony in a light most favorable to the prosecution as we are required to do, we agree that the evidence was sufficient to establish each element of the crime. See, Schlee
at 13.
 {¶ 20} Next, we will address Bush's manifest weight argument. "`Manifest weight' requires a review of the weight of the evidence presented * * *." See, Schlee at 14. Weight of the evidence goes directly to credibility of the evidence. "Weight is not a question of mathematics, but depends on its effect in inducing belief." Thompkins, supra, at 387. In order to reverse a conviction for an inappropriate application of the weight of evidence, a review of the entire record must disclose that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *." Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 21} In support of his manifest weight argument, Bush first points to the fact that the victim's testimony was uncorroborated. "There is no requirement that a rape victim's testimony be corroborated as a condition precedent to the conviction." State v. Matha (1995), 107 Ohio App.3d 756, 759. Bush then asserts, as a companion argument, the alleged "sordid relationship" between the victim and McGlothin along with the inconsistencies in the victim's testimony regarding the rape weigh in favor of Bush and preclude conviction.
 {¶ 22} First, we are not convinced that the so-called "sordid relationship," as characterized by Bush, between the victim and McGlothin weighs against a conviction. The relationship between the victim and McGlothin was certainly unconventional. Apparently McGlothin took the victim under her wing even though McGlothin was probably not the best role model for the victim.[5]
Drugs and alcohol were a constant presence in the McGlothin home and the victim was well aware of these substances. Bush proposes that this tumultuous background of McGlothin should be considered in review of the victim's testimony. There is nothing in the record to suggest that McGlothin's background and the entire tenor of their relationship was not considered by the jury.
 {¶ 23} Next, Bush calls our attention to the inconsistencies in the victim's testimony regarding certain details of the rape. Bush cites five specific areas of concern: (1) the victim's memory in general, (2) the lack of erratic driving during the alleged rape, (3) the victim's description of green semen, (4) the victim's recollection of Bush's underwear, (5) the victim's failure to report the rape.
 {¶ 24} First, the victim did admit that he had difficulty remembering certain details of the rape and the circumstances surrounding the event. The victim stated in response to defense counsel's questions regarding his intermittent memory, "It's been a long time. I don't want to remember it." During cross-examination of the victim, defense counsel questioned the inconsistencies between a tape-recorded conversation between the defense counsel and the victim that occurred at the victim's home just days before trial.[6]
 {¶ 25} One of these inconsistencies concerned the exact instruction of Bush. In the tape-recorded conversation, the victim initially stated: "He (Bush) said `give me head or I will kill you.'" The victim then clarified his response during the tape-recorded conversation by saying: "[H]e said, `give me head' or `suck my dick'" followed by the threat to kill the victim. Defense counsel appropriately attacked this vernacular difference during the trial in an attempt to call into question the victim's recollection of the event.
 {¶ 26} Bush alleges the victim confused the exact location when Bush began undressing. In video-taped testimony to a nurse at Robinson Memorial Hospital, the victim described the location as a traffic light. During his trial testimony, the victim testified Bush began undressing near the elementary school. These two descriptions are not at odds. The victim explained at trial, "The East Elementary school is right over behind the light." Therefore, due to the close proximity of the elementary school and the previously referenced traffic light, we do not find these statements offer any substantial deviation of the victim's recollection.
 {¶ 27} Next, Bush calls our attention to the testimony of Bush's sister Margaret Jones in opposition to the victim's recollection of the rape. Jones testified that she was driving around the area looking for her brother. She spotted his car driving in the opposite direction of her and she turned around. Jones stated she "still had sight" of Bush's car after she turned. Jones does not mention any erratic driving. Bush proposes that due to this failure of Jones to mention any observation of erratic driving, the rape must be a falsehood.
 {¶ 28} Bush proposes that as a result of the above-described inconsistencies in the victim's statements, his testimony should be discounted as unbelievable and therefore the conviction for rape is against the manifest weight of the evidence. Inconsistencies in testimony place the witness's credibility at issue. See, Schlee at 16. It is then the duty of the jury to weigh that credibility. Id. It is important to consider the evidence in its entirety, not in limited excerpts.
 {¶ 29} The victim was a thirteen-year-old boy at the time of this event. It is logical that at such an age, the victim may have many terms which he has heard or used for the acts he was forced to perform. It is possible that under the circumstances of his initial conversation with defense counsel, the victim inserted his own vernacular for the exact words of Bush. In regards to the testimony of Margaret Jones' failure to point out any observation of erratic driving by Bush; the question was never posed to Jones. Jones was never asked whether or not she observed erratic driving. Obviously the jury did not make the leap from this lack of evidence to the conclusion that the victim was lying. Likewise, in review of all the evidence, we cannot say the failure of the jury to make this leap is against the manifest weight of the evidence.
 {¶ 30} In regards to the victim's account of details of Bush's penis and the "green semen," the victim testified that he remembered "something coming in his mouth because it got real sticky." The victim further described the substance as "a light mixture color * * *." When pressed further on the exact color of this substance, the victim stated: "I'm going to say like a light green mixture. I don't know. Kind of just a light green. * * * It was coming out the head of his penis." On cross-examination, defense counsel again tried to impeach the victim's recollection by using the tape-recorded conversation between counsel and the victim. The victim did tell defense counsel during that interview that there was something green coming out of Bush's penis. Although this is consistent with his testimony at trial, the evidence at trial proved that Bush could not have had green semen emitting from his penis on the day of the attack because he was free from any sexually transmitted diseases. According to expert testimony, the only cause for green semen would have been from a sexually transmitted disease. Clearly this is an area where the victim's recollection may not have been credible. However, as previously stated, the evidence must be considered in its entirety.
 {¶ 31} The confusion over the color of Bush's underwear is not convincing as a discrepancy. The victim testified firmly throughout that he remembered the color of Bush's underwear was "red." The victim repetitively stated this detail when questioned. The victim also advised the nurse at the hospital that the underwear were red. Bush confuses the victim's second recollection in regards to the underwear with a confusion of color. We do not agree. The victim testified the style of the underwear was "boxer briefs." The victim indicated he "thought they were whitey tideys [sic] or boxer briefs." In our review, the victim was describing the style, not the color, when he stated "whitey tideys." This does not create inconsistency.
 {¶ 32} The final alleged contradiction is the victim's testimony regarding his feelings surrounding the rape and his subsequent behavior. The victim reported feeling scared during the attack and further reported that he did not immediately report the incident because he was "scared for my life." Bush questions how this fear can be reconciled with the fact that the victim continued to visit the Burger King where Bush worked after the attack. The victim indicated he only visited for food and that he always had a companion with him when he went to Burger King. We do not find this inconsistency to be so irreconcilable as to discount the victim's testimony.
 {¶ 33} We do not agree that the victim's conviction for rape was against the manifest weight of the evidence. It is the jury's duty to weigh all the evidence and determine the extent of the victim's credibility as well as the other witnesses and evidence. It is important to note that Bush presented multiple witnesses and exhibits in his defense. Apparently the jury found the victim's testimony and the state's evidence more convincing. After a review of the evidence, we cannot say that the jury lost its way in convicting Bush for rape.
 {¶ 34} Bush's first assignment of error is without merit.
 {¶ 35} Bush's second assignment of error alleges the convictions for kidnapping and unlawful sexual conduct with a minor are not supported by sufficient evidence and are against the weight of the evidence.
 {¶ 36} A conviction equals a verdict plus a sentence. See,State v. McGuire (1997), 80 Ohio St.3d 390, 399. When convictions are merged for sentencing purposes, the offender is only convicted of that crime for which he is sentenced. See,State v. Osborne (1976), 49 Ohio St.2d 135, 144, (vacated in part on other grounds). The trial court acknowledged the parties had stipulated that the guilty verdicts for rape, kidnapping and unlawful sexual conduct with a minor, merged for sentencing purposes. The trial court then proceeded to sentence Bush to nine years imprisonment on the offense of rape only. The trial court failed to address the disposal of the remaining guilty verdicts for kidnapping and unlawful sexual conduct with a minor. However, the failure of the court to specifically dismiss those counts as offenses of similar import does not translate to convictions for those offenses. Clearly, Bush was not sentenced on the kidnapping and unlawful sexual conduct with a minor charges and therefore those charges have not become convictions. By procedure alone, in sentencing Bush solely on the rape charge, the trial court dismissed the remaining charges. Therefore, since Bush was not convicted of either kidnapping or unlawful sexual conduct with a minor, we find that Bush's second assignment of error doe not present a proper issue for review.
 {¶ 37} Bush's second assignment of error is without merit.
 {¶ 38} Bush's third assignment of error centers on a conviction for intimidation of a crime witness. We find that Bush is mistaken in his understanding of the procedural history regarding the charge for intimidation of a crime witness. The record discloses that Bush was charged with intimidation of a crime witness. At the close of the presentation of the state's evidence, Bush moved, pursuant to Crim. R. 29, for a directed verdict of acquittal on all charges. The trial court granted the motion as to the intimidation of a crime witness charge. The jury returned a guilty verdict on the remaining four charges. The judgment entry of the trial court reflects the same. Bush was sentenced to a two-year imprisonment term for the conviction of intimidation of a crime victim — not crime witness. Bush alleges that the judge, prosecutor and defense counsel "forgot" the intimidation charge had been dismissed as it relates a crime witness and sentenced Bush to prison anyway. In our review, it is Bush who is mistaken as to the outcome of this charge.
 {¶ 39} Bush's third assignment of error is without merit.
 {¶ 40} Bush's remaining assignment of error alleges the trial court failed to comply with Ohio's felony sentencing laws. We will address the second prong of Bush's sentencing argument first for ease of discussion.
 {¶ 41} Bush was sentenced to two years imprisonment for intimidation of a crime victim to run consecutive to the nine years imprisonment on the rape conviction. Prior to rendering this consecutive sentence, the trial court found that in order "to adequately punish the offender and because of Defendant's criminal history consecutive terms are necessary to protect the public." This type of judicial fact-finding has since been held unconstitutional. State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, at paragraph three of the syllabus.
 {¶ 42} Blakely v. Washington (2004), 542 U.S. 296 was decided on June 24, 2004. Bush's notice of appeal was filed on January 18, 2005. Accordingly, at the time his appeal was filed, Bush was on notice that Blakely might significantly impact Ohio's felony sentencing scheme. Notwithstanding this notice, appellant failed to assign as error any issue pertaining toBlakely. We have previously stated: "While we may make determinations as to issues not raised by the parties, we abuse our discretion by deciding constitutional issues not raised or briefed by the parties." State v. Head, 11th Dist. No. 2001-L-228, 2005-Ohio-3407, at ¶ 92, citing State v. 1981 DodgeRam Van (1988), 36 Ohio St.3d 168, 170.
 {¶ 43} However, in Foster, the Supreme Court of Ohio held the consecutive portion of the statutory scheme under which Bush was sentenced unconstitutional. In doing so, the court stated that any case "pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." Id. at ¶ 104. Accordingly, even though Blakely was not expressly raised on appeal, we are required to vacate and remand to the trial court the consecutive portion of Bush's sentence for a new sentencing hearing. See, State v. Byrd, 1st Dist. No. C-050111, 2006-Ohio-1219; State v. Mitchell, 2d Dist. No. 21020, 2006-Ohio-1602; State v. Hon, 5th Dist. No. 05-CAA-04-023, 2006-Ohio-1668; State v. Hamblin, 6th Dist. No. L-05-1214, 2006-Ohio-1628; State v. Spates, 8th Dist. No. 86486, 2006-Ohio-1564; State v. Rogers, 12th Dist. No. CA2005-04-025, 2006-Ohio-1273.
 {¶ 44} In Foster, the Supreme Court held that R.C.2929.14(B) and 2929.14(C) violate a defendant's Sixth Amendment right to a jury trial by replacing the judge as the fact-finder in lieu of the jury. Apprendi v. New Jersey (2000),530 U.S. 466; Blakely, supra. This holding placed the Ohio sentencing statutes at risk in their entirety. Therefore, the Supreme Court determined that severing the unconstitutional provisions of those Revised Code statutes would serve as an appropriate remedy. "All references to mandatory judicial fact-finding properly may be eliminated in the four areas of concern." Foster at ¶ 96.
 {¶ 45} After the severance of the applicable statutes, the trial court is entrusted with full discretion in meting out sentences. Upon remand, the trial court is no longer required to make findings or give its reasons for imposing the consecutive sentence. Id. at paragraph seven of the syllabus. "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range." Id. at ¶ 105. The discretion is left to the trial court. "While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties." Id. at ¶ 105.
 {¶ 46} Bush was also sentenced to nine years for rape, a first-degree felony pursuant to R.C. 2907.02. The basic imprisonment range for first-degree felonies is set forth in R.C.2929.14(A)(1) as a minimum of three years and a maximum of ten years. Foster does not require this sentence be remanded. Id. No portion of the sentencing statutory scheme relied on by the trial court for the rape offense has been declared unconstitutional by Foster. Therefore, the sentence imposed on the rape offense is not void and does not require remand to the trial court.
 {¶ 47} The sentencing review statute remains in effect for all sentencing guidelines not declared unconstitutional byFoster. See, Id., see also, State v. Saxon,109 Ohio St.3d 176, 2006-Ohio-1245, at ¶ 4. The portions of the statute relied on by the trial court in sentencing Bush to nine years on the rape offense were not declared unconstitutional by Foster
because there is no requirement for judicial fact-finding pursuant to the statute. Therefore, the nine-year rape sentence withstands the scrutiny of Foster and is not subject to aFoster remand or analysis. Id.
 {¶ 48} Therefore, we will address the arguments raised in challenge to the nine-year rape sentence as presented. Bush alleges the trial court improperly sentenced him to a term beyond the minimum without justification. If an offender has previously served prison time, the trial court is not required to impose the minimum prison term. See, R.C. 2929.14(B)(1). No findings of fact are required to support a sentence beyond the minimum prison term when the offender has a previous prison record. According to the pre-sentence report, Bush was previously imprisoned for a similar offense in 1992. Bush served nearly six years for that offense. Therefore, the trial court was not required to make, and in fact did not make, any judicial findings of fact prior to the imposition of the prison term beyond the minimum period. As a result, the sentence on its face does not invoke Foster since the applicable statutory language is severable and remains constitutional.
 {¶ 49} Therefore, we will review the second prong of Bush's remaining assignment of error de novo. "A reviewing court will not disturb a defendant's sentence absent a finding, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law." State v.Lloyd, 11th Dist. No. 2002-L-069, 2003-Ohio-6417, at ¶ 6.
 {¶ 50} Ohio Revised Code 2929.11(A) states that a trial court's sentence for a felony conviction shall be consistent with the "overriding purposes of felony sentencing." Those purposes "* * * are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11.
 {¶ 51} Bush was sentenced to nine years for the rape of a thirteen-year old boy. In consideration of his prior imprisonment for a similar offense, we cannot say that this sentence failed to serve the purposes of the sentencing guidelines. Based on the prior conviction for a nearly identical offense, the sentence was likely imposed to protect the public from future crime. Further, Bush was sentenced within the guidelines for a first-degree felony. Bush argues that the trial court failed to announce its findings of fact on the record and thus failed to follow the now-unconstitutional statutes. However, due to Bush's prior criminal record, the trial court was not obligated to set forth its findings. Furthermore, the trial court acknowledged that it had considered all relevant factors including the principles and purpose of felony sentencing as well as the recidivism factors. In review of the entire record, we agree with the sentence of the trial court.
 {¶ 52} Bush's fourth assignment of error is well-taken in part and without merit in part.
 {¶ 53} In light of Foster, the judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded in part for proceedings to resentence consistent with this opinion pursuant to Foster.
Donald R. Ford, P.J., concurs.
William M. O'neill, J., concurs in judgment only.
[1] The intimidation of a crime witness charge was dismissed by the trial court at the close of the prosecution's case upon Bush's Crim. R. 29 motion.
[2] According to the trial court's sentencing entry, "Counts One, Two and Five are of similar import and merge for sentencing purpose."
[3] The victim stated that he had seen Bush prior to June 25, 2004 because Bush worked at the local Burger King frequented by the victim.
[4] Bush returned to the McGlothin home later that night and delivered an unidentified object to McGlothin. After the delivery, he immediately left.
[5] The record discloses that McGlothin had previously been previously convicted of forgery and had also been charged with numerous drug offenses. This history was purposely not discussed at the trial, according to the record.
[6] It should be noted that the conversation between the victim and defense counsel took place without any other adult present and without the permission of the victim's parent.