OPINION
{¶ 1} Appellant, Lyndal Lee Kimble ("Kimble"), timely appeals his convictions for eight counts of trafficking in cocaine, fifth-degree felonies in violation of R.C. 2925.03(A)(1) (C)(4)(a) and one count of possession of cocaine, a fifth-degree felony in violation of R.C. 2925.11(A) (C)(4)(a). For the reasons that follow, we affirm in part, reverse in part and remand.
 {¶ 2} Kimble was indicted on May 7, 2004 for the following: Counts 1-8: trafficking in cocaine, fifth-degree felonies in violation of R.C. 2925.03(A)(1) (C)(4)(a); Count 9: aggravated possession of drugs, a fifth-degree felony in violation of R.C. 2925.11(A) (C)(4)(c); Count 10: possession of cocaine, a third-degree felony in violation of R.C. 2925.11(A) (C)(4)(c) and Count 11: possession of drugs, a misdemeanor in violation of R.C. 2925.11(A) (C)(2)(a). A jury trial commenced on April 11, 2005. The jury found Kimble not guilty on Count 9. The court acquitted Kimble of Count 11. The jury convicted Kimble on the remaining counts, with Count 10 being reduced to a fifth-degree felony. Kimble was sentenced to ten months imprisonment each for Counts 1 through 8 and ten months for Count 10, sentences to be served consecutive to one another.
 {¶ 3} Kimble assigns the following errors:
 {¶ 4} "[1] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY EXCLUDING THE TESTIMONY OF WILLIAM T. WILLIAMS II, IN VIOLATION OF APPELLANT'S RIGHT TO PRESENT WITNESSES ON HIS BEHALF, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION.
 {¶ 5} "[2] THE TRIAL COURT'S IMPOSITION OF A SENTENCE GREATER THAN THE MINIMUM TERM PERMITTED BY STATUTE AND OF CONSECUTIVE SENTENCES, BASED UPON FINDINGS NOT MADE BY A JURY NOR ADMITTED BY APPELLANT, IS CONTRARY TO LAW AND VIOLATES APPELLANT'S RIGHT TO A TRIAL BY JURY AND DUE PROCESS, AS GUARANTEED BY THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 {¶ 6} "[3] THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION.
 {¶ 7} "[4] APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} Kimble's first assignment of error challenges the trial court's decision to exclude the testimony of William T. Williams, II. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. A trial court's decision to exclude evidence will not be overturned absent an abuse of discretion. State v.Benson, 11th Dist. No. 2001-P-0086, 2002-Ohio-6942, at ¶ 7, citingState v. Kinley (1995), 72 Ohio St.3d 491, 497. An abuse of discretion implies that the trial court's decision was "arbitrary, unreasonable or unconscionable." Benson, supra, citing State v. Adams (1980),62 Ohio St.2d 151, 157-158.
 {¶ 9} Mr. Williams was called to testify during the presentation of Kimble's case-in-chief. Mr. Williams testified, in the presence of the jury, that he was previously incarcerated for drug-related convictions. He further testified, among a plethora of non-relevant information including his association with famous persons, his national recording ambitions and his philosophical studies, that he was arrested in early 2003 by the Warren Police Department. Specifically, Williams testified that he was stopped by Detective Greg Hoso of the Warren Police Department. At that point in the testimony, the trial court conducted an in camera hearing to determine the admissibility of Williams' testimony.
 {¶ 10} During the in camera, Williams testified that he was stopped by Detective Hoso in January 2003. According to Williams, Hoso questioned Williams about Kimble. Williams then described a pattern of the Warren Police Department approaching him and soliciting him to act as a confidential informant. The trial court then interrupted the testimony to determine the relevance of Williams' testimony as it related to the Kimble case on trial. "* * * [T]here hasn't been anything specific yet involving any of the officers in this case that I've heard, nothing specific." The court then invited Kimble's trial counsel to "get specific."
 {¶ 11} The purpose of Williams' testimony was to impeach the credibility of the narcotics officer who testified during the prosecution's case-in-chief that the investigation of Kimble was predicated by an anonymous tip from a female caller who indicated Kimble was dealing drugs. The trial court failed to find the testimony relevant because Williams failed to relay any specific information regarding any members of the narcotics unit involved in the underlying arrest and controlled drug buys.
 {¶ 12} Williams testified that Hoso introduced him to Detectives Gambill and Weber. From that point on, Williams dealt solely with Gambill and Weber and allegedly acted as a confidential informant. The court inquired of Williams as to when Kimble's name was discussed. Williams' replied that Hoso mentioned Kimble's name in January 2003. "Hoso mentioned the name [Kimble] He knew my information was credible so, therefore, if you know I'm credible you introduce me to these other people. You have the information you need. They were already aware of him."
 {¶ 13} Williams, as well as Kimble's attorney, intended his testimony to be a link between coercive tactics demonstrated by the Warren Police Department and an intentional targeting of Kimble. The court asked Williams to explain the connection between his testimony and the alleged coercive tactics used on him by an officer unrelated to the charges Kimble faced in relation to the officers involved in the Kimble arrest at issue in the underlying case. Williams replied by describing the stop by Hoso in early 2003. According to Williams, Hoso acted inappropriately and sexually exploited two females who were with Williams at the time of the stop. Williams' connection between Hoso's alleged inappropriate actions and the detectives involved in Kimble's case was "[b]ecause he introduced me to them once, people are known through their associations."
 {¶ 14} Williams' entire testimony was filled with confusing allegations and recitations of patterns and descriptions of incidents that were not related to Kimble or the charges in the underlying case. At one point, the court took over the interrogation and specifically inquired of Williams the following:
 {¶ 15} "Court: First of all, did Melanie Gambill ever say anything to you about targeting or going to the residence of Lyndal Kimble to do a drug buy?
 {¶ 16} "Williams: No, Your Honor, she didn't.
 {¶ 17} "* * *
 {¶ 18} "Court: Did Weber, same question, did he ever say target Lyndal's residence for a drug buy?
 {¶ 19} "Williams: No, Your Honor.
 {¶ 20} "Court: Did Coleman ever, the answer is no on Coleman also?
 {¶ 21} "Williams: Yes, sir.
 {¶ 22} "* * *
 {¶ 23} "Court: * * * Did Gambill ever ask you whether Lyndal Kimble had drugs?
 {¶ 24} "Williams: She asked me who, who everybody, yes, anybody in Warren who sold drugs, she asked."
 {¶ 25} The court continued with a series of questions wherein Williams' consistent response was that no officer involved in the underlying Kimble case had ever mentioned Kimble's name to Williams. Hoso, the officer who allegedly stopped Williams in early 2003, did not testify in the prosecution's case-in-chief. There is nothing in the record to suggest that Hoso was involved, even from a distance, with the underlying arrest of Kimble.
 {¶ 26} An accused has a right to present witnesses to establish a defense. Washington v. Texas (1967), 388 U.S. 14, 19. However, this right is constrained by the rules of evidence. State v. Lavery, 9th Dist. No. 20591, 2001-Ohio-1638, 13. Evid. R. 611 provides the trial court with authority to preside over the mode and order of witness interrogation. Evid. R. 402 provides in part, "[e]vidence which is not relevant is not admissible."
 {¶ 27} Kimble asserts that the exclusion of Williams' testimony was an abuse of discretion because it disproved the prosecution's theory that the initial investigation of Kimble began as a result of an anonymous tip. Instead, according to Kimble's theory, Williams' testimony would have proven that the investigation of Kimble was a retaliatory act for a previous arrest and media attention involving Kimble and the Warren Police Department.
 {¶ 28} Despite Kimble's characterization of Williams' testimony, no portion of Williams' testimony was relevant to Kimble's underlying case. Williams admitted that none of the officers involved in Kimble's case sub judice discussed Kimble specifically or even mentioned his name to Williams. Williams' testimony at best was a soap box against the Warren Police Department and police procedure in general, at worst it was confusing, misguided, and contradictory. The trial court did not abuse its discretion in excluding the evidence.
 {¶ 29} Kimble's first assignment of error is without merit.
 {¶ 30} Kimble's second assignment of error challenges the sentence imposed by the trial court as a result of the Ohio Supreme Court's recent decision severing certain provisions from Ohio's sentencing scheme. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. InFoster, the court held that R.C. 2929.14(B), 2929.14(C), 2929.14(E)(4) and R.C. 2929.19(B)(2) violate a defendant's Sixth Amendment right to a jury trial by replacing the judge as the fact-finder in lieu of the jury. Id.; see, also, Apprendi v. New Jersey (2000), 530 U.S. 466;Blakely v. Washington (2004), 542 U.S. 296. The court further held that following excision of the offending statutes, the statutory sentencing scheme remains in tact. Foster, supra, at paragraph four of the syllabus.
 {¶ 31} Kimble challenges the sentence on two points: the imposition of more-than-the-minimum prison term and the imposition of consecutive prison terms. Kimble was convicted of eight counts of trafficking in cocaine, felonies of the fifth degree. Pursuant to R.C. 2929.14(A)(5), the range of imprisonment for a fifth-degree felony is six to twelve months. Kimble was sentenced to ten months on each count of trafficking.
 {¶ 32} The pre-sentence investigation revealed that Kimble had served a prior prison term. "If an offender has previously served prison time, the trial court is not required to impose the minimum prison term."State v. Bush, 11th Dist. No. 2005-P-0004, 2006-Ohio-4038, at ¶ 48. There are no findings of fact necessary to impose more-than-the-minimum prison term when an offender has previously served time. Id. A prior prison term, in and of itself and without additional findings by the trial court, is sufficient to justify the imposition of a more-than-the-minimum prison term pursuant to R.C. 2929.14(B)(1). This view is consistent with the United States Supreme Court and the analysis of Foster.
 {¶ 33} The Ohio Supreme Court properly analyzed this issue inFoster, yet the syllabus of Foster fails to reflect this distinction and instead calls for the severance of R.C. 2929.14(B) in its entirety. It is incumbent upon the judiciary to review decisions in conjunction with the legal analysis accompanying the same as well as any higher authority. The United States Supreme Court has expressly held that a prior prison term is not an exercise in fact-finding. Apprendi v. NewJersey (2000), 530 U.S. 466, 490. The Ohio Supreme Court agreed, yet failed to properly memorialize this distinction. See, Foster, supra, at ¶ 60.
 {¶ 34} R.C. 2929.14(B) states in relevant part:
 {¶ 35} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 36} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 37} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender of others."
 {¶ 38} A close reading of the statute, R.C. 2929.14(B)(1), reveals that no findings of fact are required prior to the imposition of a prison term beyond the statutory minimum if the offender has previously served a prison term. Whether or not a defendant has served a prior prison term is not a question of fact that needs to be decided by the jury or the judge. The defendant either was imprisoned before or he was not. The record will speak for itself. The Ohio Supreme Court's analysis in Foster, as opposed to the syllabus, is consistent with this plain reading of the statute.
 {¶ 39} In Foster, the court stated that "* * * Ohio has a presumptive minimum prison term that must be overcome by at least one of two judicial findings. For someone who has never been to prison before (not necessarily a first-time offender), the court must find that the shortest term will `demean the seriousness` of the crime or will inadequately protect the public * * *." Foster, supra, at ¶ 60. The court went on to conclude that the judicial findings: to wit, demeaning the seriousness of the crime and the inadequate protection of the public, were unconstitutional as they replaced the jury as the fact-finder with the judge.
 {¶ 40} Foster was predicated and prompted by the Supreme Court's holding in Apprendi, supra. In Apprendi, the Supreme Court held that,"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."Apprendi, supra, at 490 (emphasis added). The court failed to diverge from this holding in Apprendi and followed the same in Blakely v.Washington (2004), 542 U.S. 296. Even after Blakely, the court reiterated its position on prior prison terms as outside the realm of the now-unconstitutional judicial fact-finding. United States v.Booker (2005), 543 U.S. 220. "Accordingly, we reaffirm our holding inApprendi. Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 244 (emphasis added).
 {¶ 41} Clearly, the United States Supreme Court, through Apprendi,Blakely and Booker, did not intend for a fact of prior imprisonment, to be akin to an unconstitutional fact-finding exercise previously performed by the judiciary. When a court takes judicial notice that a defendant has served a prior prison term, it is not taking a judgment call away from the jury. The judicial finding that prompted the holding in Apprendi was that the offender had committed the crime "with a purpose to intimidate." Apprendi, supra, at 471. This is a question of fact. Likewise, a finding that a crime was committed with deliberate cruelty is a question of fact. Blakely, supra.
 {¶ 42} However, the nature of these questions differs entirely from whether a defendant has previously served time in prison. A prior prison term is something of which the court can take judicial notice. It does not require any determination related to the merits of the case. R.C. 2929.14(B) (1) is capable of surviving post-Apprendi, post-Blakely,post-Booker and even post-Foster.
 {¶ 43} In the underlying case, the trial court took judicial notice of the fact that Kimble had served a prior prison term. The trial judge did not make any findings of fact to justify his imposition of more-than-the-minimum because pursuant to R.C. 2929.14(B)(1), he was not required to do so. The prior prison term elevated Kimble beyond the minimum without any judicial fact-finding. Therefore, the imposition of this more-than-the-minimum prison term did not offend Foster.
 {¶ 44} However, the trial court also imposed consecutive sentences. In doing so, the trial court relied on R.C. 2929.14(E)(4) and made certain findings of fact to support its sentence. According to Foster, R.C. 2929.14(E)(4) is unconstitutional and must be stricken from the sentencing scheme. The trial court is entrusted with full discretion following the severance of the offending portions of the statute. Therefore, Kimble's sentence, as it relates to the consecutive nature of the prison terms, is void and must be vacated.
 {¶ 45} Kimble's second assignment of error is well taken.
 {¶ 46} Kimble's third assignment of error alleges that Kimble was denied effective assistance of counsel in violation of theSixth Amendment. Effective assistance of counsel is guaranteed by theSixth Amendment. Strickland v. Washington (1984), 466 U.S. 668. Kimble bears the burden of proving that his trial counsel was ineffective since all properly licensed attorneys are presumed competent. Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301. Strickland set forth a two-prong test for determining ineffective assistance of counsel.Strickland, supra.
 {¶ 47} First, Kimble must show that the representation of his legal counsel fell below an objective standard of reasonableness.Strickland, supra, at 687; see, also, State v. Bradley (1989),42 Ohio St.3d 136. "Judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."Strickland, supra, at 689. There is a strong presumption that the attorney's performance was reasonable. Id.
 {¶ 48} Second, Kimble must be able to show that he was directly prejudiced as a result of the deficient performance. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, at paragraph three of the syllabus.
 {¶ 49} Kimble asserts that his trial counsel failed him by not following through with a motion to suppress evidence obtained as a result of Kimble's detention at his motor vehicle prior to the search of Kimble's home. Kimble's trial counsel did file a suppression motion as well as an amended suppression motion. He subsequently withdrew both motions. The original and the amended motions to suppress were based on the sufficiency of the evidence and additionally asserted a discovery argument.
 {¶ 50} On appeal, Kimble claims his detention at his vehicle was an unlawful arrest. Kimble further claims that he was not read hisMiranda rights in a timely fashion subsequent to this arrest. Specific to the residence, searched pursuant to a search warrant, Kimble claims the police improperly executed the search warrant by entering the residence forcefully.
 {¶ 51} Trial counsel made a standing objection to all evidence seized as a result of the search warrant and specifically from the safe located in Kimble's residence. The court overruled the objection. At one point in the trial, the court actually recessed the jury to discuss with the trial counsel the nature of the objections to the evidence from the search and the previously withdrawn motion to suppress. During this discussion, Atty. Olivito generally objected to all evidence obtained from the search due to "the infirmity of the search warrant." However, counsel went on to explain that he withdrew the suppression motions because the motions challenged the evidence on a sufficiency basis rather than on the constitutionality of the search.
 {¶ 52} Kimble claims that but for Atty. Olivito's ineffectiveness in failing to pursue the suppression motions, Kimble's remarks following the stop by the police would not have been admitted Kimble's two statements ultimately turned out to be false. Kimble argues on appeal that this affected his credibility in a negative manner. First, Kimble advised the police that no one was in the residence when in fact his mother and his wife were in the residence at the time of the execution of the search warrant. Second, Kimble stated there were no dogs on the premises when in fact there was one dog in the basement of the residence. In addition, Kimble gave the police keys allegedly to open the residence, but which ultimately could not open the door.
 {¶ 53} Kimble did not testify at trial. We fail to see how these statements could have affected Kimble's credibility in a negative manner when he did not testify at trial. See, State v. Hinnant, 8th Dist. No. 82834, 2004-Ohio-2855. We are not convinced that the statements made by Kimble, regardless of the fact that those statements turned out to be false, impacted his trial in such a manner that had they been suppressed Kimble would not have been found guilty given the plethora of evidence against Kimble.
 {¶ 54} In addition, the initial stop of Kimble was constitutional. It is not improper for police to stop someone incident to an impending execution of a search warrant in the immediate vicinity of the place of the raid. Michigan v. Summers (1981), 452 U.S. 692, 702-703; see, also,U.S. v. Cochran (1991), 939 F.2d 337, 339. Kimble claims that because he was a few blocks away from his residence that the police were not justified in stopping him. Actually, Kimble was on his street of residency — Kenilworth — when he was stopped by the police. The purpose and intent of the rule in Summers was to avoid destruction of evidence and the potential casualties of the execution of a search warrant where the circumstances are unknown. Summers, supra; see, also, Cochran, supra. Kimble was already on his street of residence. The officers stopped him to avoid destruction of evidence. Following the stop, the officers seized Kimble's cell phone which further supports their reason for the detention. If Kimble had been allowed to proceed without being detained, he would have seen the evident police presence surrounding his home and could have phoned his residence and provided instructions for the destruction of the drugs and other evidentiary material ultimately found at the residence, thereby defeating the purpose of the search warrant.
 {¶ 55} Kimble claims that any statements he made during the stop should have been suppressed. To the contrary, certain questions and answers are permitted on the basis of safety without the requirement ofMiranda warnings. New York v. Quarles (1984) 467 U.S. 649, 657-658; see, also, State v. Sneed, 166 Ohio App.3d 492, 2006-Ohio-1749, at ¶ 18-19. In this case, the officers confined their interrogation of Kimble to simple safety-related questions: Are there children in the house? Are there dogs in the house? Is anyone home? Do you have any keys? Each of these questions is directly related to maintaining both the safety of Kimble's family and immediate neighbors as well as the safety of the police officers executing the raid. No inquiries were aimed at procuring evidence-related information from Kimble. No queries were lodged that entitled Kimble to a Miranda warning.
 {¶ 56} Kimble also cites as error the failure of the police to properly give Kimble his Miranda warnings following his "unlawful arrest" and subsequent transfer to the residence to open a safe found in the home.[1] However, Kimble has failed to show how this alleged error prejudiced the outcome of the trial. Kimble only cites to the fact that "in a trial where [a]ppellant was alleged to be a drug dealer, such evidence is doubtlessly prejudicial." Considering the overwhelming evidence in favor of the state, this bald conclusory statement without more is not enough to meet the burden of proving that absent the trial counsel's decision to forego the suppression motion, the outcome of the trial would have been different. On the contrary, we conclude that due to the nature and abundance of evidence, the trial would not have been different even presuming Kimble's success on his suppression motion.[2] See, State v. Hamblin (1988), 37 Ohio St.3d 153.
 {¶ 57} Despite this, we are still unconvinced that the alleged failure to give Miranda warnings is detrimental. It is clear thatMiranda warnings should have been given to appellant before he was asked to open the safe in one of the bedrooms, which resulted in the discovery of inculpatory items. Miranda warnings are required after a person is formally arrested or that person's freedom of action is curtailed to a degree associated with formal arrest. Berkemer v. McCarty (1984),468 U.S. 420, 440. The testimony at trial showed that appellant was placed in custody at his vehicle, prior to being transported to his residence. Thus, the police should have advised appellant of his Miranda rights prior to asking him to open the safe at the residence.
 {¶ 58} There is no testimony from either side as to whetherMiranda warnings were given to appellant. However, even ifMiranda warnings were not given to appellant, he cannot demonstrate error.
 {¶ 59} Generally, when a defendant withdraws a motion to suppress, he waives any objection to the admission of the illegally obtained evidence. State v. Campbell (1994), 69 Ohio St.3d 38, 44. Here, however, appellant argues that his counsel rendered ineffective assistance by withdrawing the motion.
 {¶ 60} Failure to file (or a withdrawal of) a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal (2000),87 Ohio St.3d 378, 389, quoting Kimmelman v. Morrison (1986),477 U.S. 365, 384. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted." State v. Kuhn, 9th Dist. No. 05CA008859,2006-Ohio-4416, at ¶ 11, citing State v. Robinson (1996),108 Ohio App.3d 428, 433.
 {¶ 61} In the case sub judice, it is not likely that the motion to suppress would have been granted. Under the inevitable discoverydoctrine, evidence obtained unconstitutionally is admissible if it "would have been ultimately or inevitably discovered during the course of a lawful investigation." State v. Perkins (1985), 18 Ohio St.3d 193,196; see, also, Nix v. Williams (1984), 467 U.S. 431, 444,104 S. Ct. 2501, 81 L. Ed. 2d 377 (holding that, under the inevitable discoverydoctrine, if evidence in question "ultimately or inevitably would have been discovered by lawful means * * * then * * * the evidence should be received").
 {¶ 62} The evidence at trial showed that the police had a valid search warrant to search the premises for contraband, which would have included drugs in the safe. Officers commenced a search of the home with the assistance of a canine handler and her dog which had been trained in narcotics detection. The dog had already alerted to the safe in appellant's upstairs bedroom prior to appellant's arrival at the home. Thus, the record clearly shows that the evidence obtained in the safe would have been lawfully discovered. As such, whether the police failed to timely render a Miranda warning is negated by the inevitable discovery doctrine.
 {¶ 63} Finally, Kimble claims his trial counsel was ineffective by failing to move to suppress the evidence incident to the search of Kimble's home due to the alleged "improper" entry. R.C. 2935.12
provides: "[w]hen making an arrest or executing a warrant for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search, he is refused admittance, but an officer executing a search warrant shall not enter a house or building not described in the warrant."
 {¶ 64} Kimble provided keys to the residence in question following the traffic stop. The keys did not open the door as suggested. Kimble told police that no one was home. The police announced their presence and were not acknowledged. Faced with Kimble's assertion that the residence was empty coupled with the fact that no one responded to the knock and announcement for at least fifteen seconds, the police had no other alternative and therefore entered the structure with the aid of a battering ram through the front door. Upon entry, the police discovered two females inside who could have provided access to the police.
 {¶ 65} The knock-and-announce rule fashioned to protect human life, dignity and personal property is not so expansive that in the absence of a proper entry, the seized evidence must always be excluded. Hudson v.Michigan (2006), 126 S.Ct. 2159, 2165-2167. In addition, it may even be appropriate to enter a structure without announcement. Richards v.Wisconsin (1997), 520 U.S. 385. However, we do not have a situation where the police failed to announce their presence. The police first tried the key provided by Kimble. When those keys failed, they knocked, announced their presence, waited approximately fifteen to twenty seconds according to the trial testimony and when there was no response, they rammed the door. Nothing regarding the circumstances of this entry leads us to conclude that it was improper. The police offered Kimble an opportunity to assist in the entry to his residence. He provided keys which did not fit the locks. The police offered the women inside, women Kimble advised were not there, the opportunity to open the door. They refused to acknowledge the police presence. Under these circumstances, the forced entry was proper according to R.C. 2935.12. Accordingly, the failure to follow through with the motion to suppress as it relates to the entry into the residence was not an unreasonable trial strategy and there was no prejudice to Kimble from such failure.
 {¶ 66} Kimble's third assignment of error is without merit.
 {¶ 67} Kimble's fourth and final assignment of error challenges the trial court's decision as being against the manifest weight of the evidence. The evidence adduced at trial consisted of five videotapes (without audio) documenting five controlled drug buys between the police confidential informant and Kimble. Two of the drug buys were not caught on video tape, but rather were recorded on audio tape. One audiotape was accidentally erased by the police. In addition, Farley Scrivens, the confidential informant, testified at trial regarding the eight times he purchased drugs from Kimble on behalf of the Warren Police Department. Scrivens identified and verified each videotape and the audiotape. Kimble's trial counsel questioned Scrivens credibility and pointed out the camera quality and angles of the camera as well as Scrivens questionable background in an effort to discount the evidence.
 {¶ 68} Detective Weber described the controlled buys between Scrivens and Kimble. He testified that prior to sending Scrivens on a controlled buy, he armed him with money to purchase the drugs. This money had been photocopied prior to being given to Scrivens. Detective Weber identified each of the state's exhibits describing the drugs taken from Scrivens as a result of these drug buys. The detective also testified that following the execution of the search warrant on Kimble's home and his subsequent arrest, the police inventoried each seized item, including their photocopied money. Detectives Weber and Gambill also testified to these same matters.
 {¶ 69} All the evidence, including videotapes, audiotapes, photographs, photocopied money, testimony of the confidential informant, as well as the testimony of the detectives involved in the Kimble case, was definitely enough to support the convictions for each offense. Kimble presented only three witnesses on his behalf. Rather than a manifest weight of the evidence argument, Kimble appears to make a credibility argument on appeal. According to Kimble, Scrivens should not have been trusted because he was a drug addict himself.
 {¶ 70} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is charged to review the entire record, weigh the evidence and all reasonable inferences and consider witness credibility. State v. Thompkins (1997),78 Ohio St.3d 380, 387. When conflicts arise in the evidence, the appellate court must determine whether the jury clearly lost its way. Id. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 71} In applying this standard of review to the underlying case, we cannot say that the jury lost its way. The jury was presented with video and audio tapes, however discernable they were, along with a host of other corroborating evidence against Kimble including personal testimony, matching drug money, photographs of drugs found following the search, testimony from BCI regarding the analysis of the drugs, and additional evidence.
 {¶ 72} Kimble's fourth assignment of error is without merit.
 {¶ 73} For the reasons stated in the Opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed in part; reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
[1] First, the record is clear that Kimble was transported to the house prior to the discovery of the safe. Second, upon discovery of the safe, the officers asked Kimble if he would be willing to open the safe. He complied.
[2] We do not address herein Kimble's chances of success on the suppression motion on the basis of the lack of Miranda warnings because Kimble has failed to meet the second prong of the Strickland test. We note for the record however, that there was no testimony at trial as to when or whether Kimble received his Miranda warnings. The absence of such testimony does not necessarily lead one to the conclusion that the warnings were not given. In addition, the motions to suppress do not even mention the lack of Miranda warnings.
DONALD R. FORD, P.J., concurs,
COLLEEM MARY OTOOLE, J., concurs in judgment only with Concurring Opinion.