OPINION
{¶ 1} This an appeal from the judgment entry of divorce issued by the Geauga County Court of Common Pleas, Domestic Relations Division, in which the trial court granted appellant/cross-appellee, Robert Sedivy ("Mr. Sedivy" or "Mr. Robert Sedivy"), and appellee/cross-appellant, Candace Sedivy (aka Lawrence) ("Ms. Lawrence"), a divorce, divided the parties' property and debts, and awarded spousal support. *Page 2 
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} Mr. Sedivy and Ms. Lawrence were married on July 16, 1981. No children were born of this marriage, although Mr. Sedivy has two sons. On July 29, 2004, Ms. Lawrence filed her complaint for a divorce on the grounds of incompatibility and obtained a temporary restraining order on all the proceeds remaining from the sale of Mr. Sedivy's business, Great Lakes Harley Davidson ("GLHD"), in 2000.
 {¶ 4} On March 14, 2005, a hearing was held on a motion to dismiss new third party defendant, Debra Swetel[1]. This motion was denied and trial was held on March 28, 29, 30, 31, and April 4, 2005. The magistrate's decision was issued on July 14, 2005. After both parties filed timely objections, the court issued its judgment entry on January 24, 2006, finding, inter alia, the parties incompatible and granting them a divorce. The trial court overruled all objections, save one which noted a misnomer, and with this modification, adopted the magistrate's decision.
 {¶ 5} In pertinent part to this appeal, the court found that GLHD was a marital asset, that the Fox Road property [marital residence] and the 7429 Tyler Boulevard property were marital properties; and that Mr. Sedivy had no interest in the Auburn Township property. The court further found that Mr. Sedivy had no interest in his son's, Greg Sedivy, business, Cleveland Motorcycle Company ("CMC"), and concluded that Greg Sedivy's property, located at 8215 Lakeshore Boulevard, was not marital property. Furthermore, the court awarded Ms. Lawrence the assets from her two accounts with *Page 3 
Huntington Bank, finding that they were her separate property. The court found that the money in these accounts were gifts from her parents.
 {¶ 6} The Fox Road and 7429 Tyler Boulevard properties were ordered sold, and until such time, Mr. Sedivy was ordered to pay the expenses on those properties. After the sale of the Fox Road property, the net proceeds were to be divided between the parties, 55% to Mr. Sedivy and 45% to Ms. Lawrence, from which Mr. Sedivy would also pay $15,000 of Ms. Lawrence's attorney fees. The division of the Fox Road Property is so apportioned because the court found Mr. Sedivy was engaging in acts of financial misconduct with the marital assets.
 {¶ 7} Mr. Sedivy was also ordered to pay for temporary spousal support until the Fox Road property, where both parties are still currently residing, is sold. The court retained jurisdiction to modify the spousal support motion of either party after the property is sold.
 {¶ 8} On February 21, 2006, Mr. Sedivy filed a timely notice of appeal.
 {¶ 9} In the interim, before Ms. Lawrence's cross-appeal, the court held a hearing on February 24, 2006, on Ms. Lawrence's motion to show cause and motion to hold Mr. Sedivy in contempt; and Mr. Sedivy's motion to pay mortgage and real estate obligations out of the funds of the Bank One Securities account and motion to modify spousal support. On March 31, 2006, the court issued a judgment entry adopting the parties' agreement, and also allowing Mr. Sedivy to purge his contempt by properly arranging for disbursements from the Bank One Securities account that had been ordered by the court on September 25, 2005 and November 18, 2005. *Page 4 
 {¶ 10} After this hearing, on April 20, 2006, Ms. Lawrence timely filed a cross-appeal, which will be discussed later in this opinion. We first review Mr. Sedivy's appeal.
 {¶ 11} Appellant raises five assignments of error on this appeal:
 {¶ 12} "[1.] The trial court erred in failing to distribute all of the assets and liabilities of the marriage as of the date of the termination of the marriage.
 {¶ 13} "[2.] The trial court erred in its determination that appellee's bank accounts were her separate property, in failing to admit competent, credible evidence, and in failing to recognize and distribute to appellant his separate property.
 {¶ 14} "[3.] The trial court abused its discretion by awarding appellee a disproportionate share of the marital assets.
 {¶ 15} "[4.] The trial court abused its discretion in awarding appellee an unreasonable and inappropriate amount and duration of spousal support without consideration of the relevant statutory factors.
 {¶ 16} "[5.] In divorce proceedings, for purposes of Civ. R. 54(B), the court shall not enter final judgment unless the judgment also divides the property of the parties and determines the appropriateness of an order of spousal support. Civ. R. 75(F)(1)."
 {¶ 17} Disposition of Marital and Separate Property
 {¶ 18} In his first assignment of error, Mr. Sedivy argues that the trial court did not divide all of the marital and separate property equitably between the parties. Specifically, Mr. Sedivy argues that no disposition of 7429 Tyler Boulevard was made, although he has been ordered to pay all related expenses until the property is sold. Mr. Sedivy further argues that he was wrongfully ordered to pay all the expenses on the Fox *Page 5 
Road property until it is sold, and that the court failed to quantify and allocate the marital debts when it quantified and allocated the marital assets.
 {¶ 19} We will not disturb the trial court's distribution of marital property absent an abuse of discretion. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.Measor v. Measor, 160 Ohio App.3d 60, 2005-Ohio-1417, ¶ 9, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144, and Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 20} The division of marital and separate property is governed by R.C. 3105.171. The trial court must determine whether particular property is separate or marital in nature, and then make an equitable distribution of that property.
 {¶ 21} Marital property includes either real and personal property or an interest in such property owned by one or both of the spouses and was "acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). Property acquired during marriage is presumed to be marital unless it can be shown to be separate. McLeod v. McLeod, 11th Dist. No. 2000-L-197, 2002-Ohio-3710, at ¶ 16, citing Fredrick v.Fredrick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458, at 6. Separate property generally consists of all real and personal property that was acquired by one spouse prior to the marriage.McLeod at 17, citing R.C. 3105.171(A)(6)(a)(i-viii).
 {¶ 22} However, it is "well known that `the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separateproperty is not traceable." (Emphasis added). McCleod at ¶ 23, citing R.C. 3105.171(A)(6)(b). Thus, the focus becomes on *Page 6 
traceability and determining whether separate property has lost its character by becoming commingled with marital property. Id. citingPeck v. Peck (1994), 96 Ohio App.3d 731, 734. The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset as separate property. Id.
 {¶ 23} A review of the record supports Mr. Sedivy's first contention regarding the valuation and disposition of 7429 Tyler Boulevard. Although we find there is evidence to support the finding that this property is marital property, we find that the court was not sufficiently clear in valuing and disposing the property.
 {¶ 24} "It is a well established rule in this district that findings of value must be made with respect to marital assets." Bates v.Bates (Sept. 30, 1993), 11th Dist. No. 92-T-4780, 1993 Ohio App. LEXIS 4812, at 9, citing Crain v. Crain (Nov. 8, 1991), Trumbull App. No. 90-T-4448, 1991 Ohio App. LEXIS 5353, at 8. This is so since, as a practical matter, we cannot review the disposition of the property without specific findings. Bates at 10, citing Willis v. Willis (1984),19 Ohio App.3d 45. Thus, "[a] trial court must provide specific, clear, and patent explanations of the basis for their property divisions. Omission of specific valuations of property and of the rationale behind their allocation to the individual party will lead an appellate court to find that the trial court had an insufficient basis for making its award. * * *" Id. at 9, citing Bollas v. Bollas (Dec. 1, 1989), Trumbull App. No. 88-T-4089, 1989 Ohio App. LEXIS 4445, at 6.
 {¶ 25} Using Mr. Sedivy's own testimony, the court valued the property at approximately $350,000. The property is encumbered by a Sky Bank mortgage of $449,491, plus real estate taxes of $4,004. The court further found that categorizing *Page 7 
this property as "marital" or "separate" was merely an "academic exercise" since the debt encumbering the asset far outweighs the value of the asset in this case. Ultimately, the court found that the numerous transactions involving the property transmuted the property from separate to marital. This loss in value is further compounded by the fact that Mr. Sedivy is willingly operating at a loss by accepting only a $2,000 monthly rent payment from his tenant and son, Greg Sedivy, when the monthly mortgage payment is $3,907. Indeed, part of the findings of Mr. Sedivy's financial misconduct, discussed, infra, stem from this lease agreement.
 {¶ 26} Although it appears from reading the final judgment entry, which incorporated the magistrate's decision with only a nonsubstantive charge as a whole, that the court ordered the property be sold, there is no express order to sell 7429 Tyler Boulevard. By implication, the court ordered the sale when it ordered Mr. Sedivy to pay the expenses associated with the Fox Road property and the 7429 Tyler Boulevard property "until those properties are sold." (Emphasis added).
 {¶ 27} We assume that the court meant for this property to be sold when the court ordered Mr. Sedivy to continue paying the expenses since he is responsible for operating at such a loss. The court also ordered Mr. Sedivy to pay any arrearages on these expenses out of his 45% share of the profits from the sale of the Fox Road property. However, the sale and final distribution of this marital asset must be clarified, as the parties are confused on how to manage this marital asset.
 {¶ 28} In Simmons v. Simmons (May 10, 1996), 11th Dist. No. 95-T-5237, 1996 Ohio App. LEXIS 1897, the trial court similarly found the marital business to be of little value. However, as here, the court found the business to be marital, subject to division. *Page 8 
We reversed, since the court was not sufficiently clear in its findings. Thus, we found we were unable to properly review this portion of the marital award. Although the court ordered the disposition of the business, it offered little in the way of valuation. We held "[i]t is error for the trial court to fail to make a finding as to the fair market value of each item of marital property so that an appellate court can effectively review the propriety of the court's decision." Id. at 4, citing Eisler v. Eisler (1985), 24 Ohio App.3d 151.
 {¶ 29} We find that the trial court needs to clarify the valuation and disposition of 7429 Tyler Boulevard upon remand.
 {¶ 30} As to the Fox Road property we find the court properly quantified the debts of the Fox Road property. The support agreement clearly lists the expenses that Mr. Sedivy currently must pay on the Fox Road property, which includes mortgages, real estate taxes, homeowner's insurance, electric, land-line telephone, and Dish Network charges. By the parties' agreement, adopted by the court on March 31, 2006, the parties modified the spousal support because they cancelled the Dish Network. The judgment entry also contained specific reference to the mortgage obligations relative to the property, namely, National City Bank and First Merit.
 {¶ 31} Both Ms. Lawrence and Mr. Sedivy are currently residing on this property. The property has been ordered sold and the proceeds split between the parties, 55% to Ms. Lawrence and 45% to Mr. Sedivy, the difference attributable to Mr. Sedivy's financial misconduct. The court further found that Mr. Sedivy's monthly income is sufficient to meet these expenses. Since he is in the position of controlling all of the marital financial assets, it is not unreasonable to order him to continue to pay the expenses on Fox Road property until it is sold. Furthermore, we find that Mr. Sedivy did *Page 9 
not state which debts have not been quantified and offers no evidentiary support for this argument.
 {¶ 32} We find this assignment of error to have merit with respect to the valuation and disposition of 7429 Tyler Boulevard.
 {¶ 33} Appellant's first assignment of error is reversed in part.
 {¶ 34} Division of Property — Marital v. Separate
 {¶ 35} In his second assignment of error, Mr. Sedivy argues that the trial court erred in its determination that Ms. Lawrence's two closed Huntington Bank accounts were her separate property and that the court erred in denying Mr. Sedivy's request that "Moody's Manual" be admitted into evidence as proof that the GLHD's business success was due solely to the increase in popularity of Harley Davidson motorcycles. The success of GLHD, Mr. Sedivy argues, was due solely from this passive appreciation and had nothing to do with the fact that he testified to working twelve to fifteen hour days, six, often seven days a week, and the fact that marital funds were transferred to the GLHD business via mortgages. Thus, Mr. Sedivy contends that GLHD should have been declared his separate property.
 {¶ 36} The Huntington Bank Accounts
 {¶ 37} We find Mr. Sedivy's arguments unpersuasive. First, as to the Huntington Bank accounts, we must determine whether the funds in these accounts stem from gifts. An "inter vivos gift occurs when the donor executes `an immediate voluntary, gratuitous, and irrevocable transfer of property to the donee.'" McCleod at ¶ 71, citing Smith v. Shafer
(1993), 89 Ohio App.3d 181, 183. There are three essential elements: (1) the donor must intend to make an immediate gift, (2) which is delivered to the donee, and *Page 10 
(3) the gift is accepted by the donee, after the donor has relinquished control of the property. McLeod at ¶ 71.
 {¶ 38} Furthermore, R.C. 3105.171(A)(6)(a)(vii) provides that a gift acquired by either spouse during the marriage is presumed marital, unless the proponent establishes by clear and convincing evidence that it is the recipient's exclusive property. Id. at ¶ 72, citingBarkley v. Barkley (1997), 119 Ohio App.3d at 168-169. "Clear and convincing evidence has been defined as `that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.'" Id. We are mindful that when reviewing evidence presented at trial, an appellate court must not reweigh the evidence. Id. at ¶ 55, citing CE. Morris v. FoleyConstruction Co. (1978), 5 Ohio St.2d 279, syllabus.
 {¶ 39} Ms. Lawrence presented evidence that the two closed accounts with Huntington Bank were her separate property. Specifically, Ms. Lawrence testified that one of these accounts was a joint account with right of survivorship with her mother, and that the other was a savings account; both of which contained money that was a gift from her parents. Mr. Sedivy testified that he did not know the source of the funds, although he did direct Ms. Lawrence to retrieve the funds and close the accounts during his IRS audit. The evidence further established that Ms. Lawrence never worked during the marriage except to write some freelance newspaper articles, some of which she never received compensation for. There is no evidence to the contrary that the money in these accounts were anything but gifts from Ms. Lawrence's parents. Thus, there is evidence to support Ms. Lawrence's claim and the court's conclusion, which Mr. Sedivy failed to rebut. *Page 11 
 {¶ 40} "The trial court or magistrate is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflection in order to assess their credibility and weigh the testimony." Hvamb v.Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, at ¶ 18, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, we defer to the trier of fact, matters of witnesses' credibility. Hvamb at ¶ 18, citing Babka v. Babka (1992), 83 Ohio App.3d 428. "In the event that the evidence is susceptible to more than one interpretation, a reviewing court must construe it consistently with the trial court's judgment."Hvamb at ¶ 18, citing Gerijo, Inc. v. Fairfeld (1994),70 Ohio St.3d 223, 226.
 {¶ 41} Great Lakes Harley Davidson Business (GLHD)
 {¶ 42} Sedivy also argues that the court erred by finding GLHD to be marital property and that the increase in profits during the marriage was due solely to passive appreciation because of the increasing popularity in the late 1990s for Harley Davidson motorcycles.
 {¶ 43} We disagree with Mr. Sedivy's contentions. The party seeking to have property declared separate has the burden of establishing such by a preponderance of the evidence. "Passive income" is defined in R.C. 3105.171(A)(4) as "that which is acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse during the marriage. Furthermore, as a general matter, a spouse can render separate property into marital property through his or her actions during the course of the marriage." Measor at ¶ 63, citing Helton v. Helton (1996),114 Ohio App.3d 693, 685. *Page 12 
 {¶ 44} First, Mr. Sedivy did not establish that GLHD was his separate property. His tracing was inadequate at best, and the record is replete with evidence that he used funds interchangeably between the Fox Road property and his various business dealings. Most notably, the value of GLHD at the commencement of the marriage was never offered into evidence. The success of GLHD is a fruitful product of this marriage. Articles of incorporation of GLHD were filed on July, 16, 1977, but it is clear from the evidence that the business was not established until after the marriage began. Furthermore, credit was extended on the marital Fox Road property in order to support GLHD, and GLHD was involved in providing the financing for initially purchasing the Fox Road property.
 {¶ 45} Second, even if the court did find that GLHD was separate property before the marriage, Mr. Sedivy's argument that all profits should be considered passive appreciation is simply not plausible. There is ample evidence in the record from which the trial court could conclude that GLHD was marital property. All the transactions that occurred in supporting GLHD, shortly after the marriage of the parties until the sale of the business in 2000, as evidenced in the record, support the trial court's determination that this business is a marital asset and that the proceeds from the GLHD sale should be equitably divided between the parties.
 {¶ 46} Specifically, the trial court found no corporate record book, stock ledger or stock certificate was entered into evidence, no evidence was submitted demonstrating when GLHD commenced operation, the earliest tax return for GLHD was dated 1994, no financial statements were submitted into evidence, no bank records for GLHD prior to the marriage were submitted into evidence, and most importantly, no valuation of *Page 13 
GLHD at or near the time of marriage was submitted into evidence. Furthermore, Mr. Sedivy submitted financial statements from 1981, 1982, 1983, 1984, and 1985 that contained no reference or valuation of GLHD, and in fact, he never listed himself as the owner, but rather as a salesman. The magistrate's findings also included documentation of various mortgages taken from the marital property in order to support GLHD. Thus, the court rightly found that Mr. Sedivy failed to carry his burden of proof on this matter.
 {¶ 47} Mr. Sedivy also argues that the court abused its discretion by failing to admit "Moody's Manual" as evidence that the success of GLHD sales was caused by the increase in popularity of Harley Davidson motorcycles, and, thus, all appreciation was solely passive and should be considered separate property.
 {¶ 48} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. Therefore, we will not reverse the trial court's decision to exclude this evidence unless it is determined that the trial court abused its discretion in doing so. State v. Kimble, 11th Dist. No. 2005-T-0086, 2006-Ohio-6863, at ¶ 8, citing State v. Benson, 11th Dist. No. 2001-P-0086, 2002-Ohio-6942, at ¶ 7.
 {¶ 49} Upon review, we find that the trial court did not abuse its discretion since it chose to believe the testimony of Mr. Sedivy that the increase of profits was due to the fact he worked twelve to fifteen hour days, six, sometimes seven days a week. Furthermore, Mr. Sedivy was not offering a valuation of the fair market price of GLHD, but was merely offering statistics of a nationwide trend. Thus, there is evidence upon which the trial court relied, and we will not disturb this decision. *Page 14 
 {¶ 50} We find appellant's second assignment of error to be without merit.
 {¶ 51} Financial Misconduct
 {¶ 52} In his third assignment of error, Mr. Sedivy argues that the court erred by awarding Ms. Lawrence a disproportionate share of marital assets. We disagree. There is ample evidence to support the trial court's conclusion that Mr. Sedivy engaged in acts of financial misconduct.
 {¶ 53} A trial court enjoys broad discretion in deciding whether or not to compensate one spouse for the financial misconduct of the other.Hvamb at ¶ 14. "R.C. § 3105.171(E) permits a trial court to make a distributive award to, inter alia, compensate one spouse for the financial misconduct of another." Id. "Financial misconduct includes the dissipation, concealment, destruction, or fraudulent disposition of assets." Id. citing R.C. § 3105.171 (E)(3). The burden of proving financial misconduct is on the complaining spouse. Id. at ¶ 15, citingGallo v. Gallo. 11th Dist. No. 2000-L-208, 2002-Ohio-2815. "When determining whether to make a distributive award, the court must consider all of the factors identified in R.C. 3105.171(F), and any other factors it deems relevant. The court must make specific written findings of fact to support its decision." Id. at ¶ 15.
 {¶ 54} A review of the record supports the court's findings of financial misconduct. Specifically, the court found: "The financial transaction between Mr. Sedivy and Ms. Swetel constitutes financial misconduct; the sale of the property to Mr. McMillan for less than value also constitutes financial misconduct; the lease on the property by Mr. Sedivy to his son for $1,000.00 per month less than the mortgage also constitutes financial misconduct." Further, the court, in adopting the magistrate's *Page 15 
decision in the judgment entry, and after reviewing the record stated: "The Court further finds that Magistrate's findings of financial misconduct, and decisions thereon, are adequately justified, the transcript being replete with evidence thereon. The fact that Defendant Robert A. Sedivy unabashedly admits to hiding assets from his apparently legitimate creditors, as well as from the IRS, is a backdrop against which instances of financial misconduct vis-À-vis his spouse should not be surprising."
 {¶ 55} We agree with the trial court that the record is replete with acts of financial misconduct on the part of Mr. Sedivy. Mr. Sedivy, himself, claimed he did not understand all of his financial dealings, and deferred most of the questions to his accountant upon examination at trial. He failed to adequately trace marital funds, did not pay taxes, ignored corporate structures, and dealt with large amounts of unknown dollars of cash. Absent evidence to the contrary, we will not find an abuse of discretion in awarding Ms. Lawrence 10% more from the net sale and proceeds from the Fox Road property.
 {¶ 56} Appellant's third assignment of error is without merit.
 {¶ 57} Spousal Support
 {¶ 58} In his fourth assignment of error, Mr. Sedivy contends that the court unreasonably awarded spousal support without reviewing all the required statutory factors of R.C. § 3105.18. Since he addresses the appropriateness of the spousal support award in his fourth and fifth assignments of error, we will address them together.[2] We find no abuse of discretion. The trial court properly reviewed the *Page 16 
statutory factors of R.C. § 3105.18 and the spousal support award is appropriate in this case.
 {¶ 59} "A trial court enjoys broad discretion in fashioning an award of spousal support." Thus, "spousal support will be upheld if it is appropriate and reasonable." Gallo at ¶ 36, citing Matic v. Matic (July 27, 2001), 11th Dist. No. 2000-G-2266, 2001 Ohio App. LEXIS 3360. The party challenging the award bears the burden of showing the award was an abuse of discretion. Id. citing West v. West, 9th Dist. No. 01 CA0045, 2002-Ohio-1118.
 {¶ 60} The trial court is required to consider the factors set forth in R.C. § 3105.18(C)(1), which are: "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) lost income that results from the parties' marital responsibilities; and (14) and other factors the court deems relevant." Id. at ¶ 38.
 {¶ 61} "A trial court must indicate the basis for awarding spousal support in sufficient detail for an appellate court to adequately review the issue." Id. at ¶ 39, citing Stafinsky v. Stafinsky (1996),116 Ohio App. 3d 781, 784. Furthermore, "[t]he amount of support is discretionary with the trial court." Id. at ¶ 39, citing Moore v. Moore (1992),83 Ohio App. 3d 75, 78. *Page 17 
 {¶ 62} Ms. Lawrence was not employed outside of the family farm during the length of the marriage, except for writing some news articles sporadically over the years and operating the farm as a business that generated very little income from boarding horses and horse clinics. Mr. Sedivy was the sole source of income. In addition, the court's award of spousal support specifically retained jurisdiction in order to modify the support once the Fox Road property is sold, recognizing that there are additional expenses relating to this property, where both of the parties still currently reside.
 {¶ 63} In reviewing the court's decision, we turn first to the judgment entry which orders spousal support to continue until the death of party, marriage, or cohabitation per the temporary support order, which is also attached to the judgment entry. In addition, the court retained jurisdiction to modify the support after the Fox Road property is sold, upon motion of either party.
 {¶ 64} We turn next to the adopted magistrate's decision, which specifically evaluated the factors of R.C. § 3105.18(C)(1). The magistrate noted: the twenty-three year duration of the marriage; that neither party has retirement benefits; the parties' respective ages, and; Mr. Sedivy's and Ms. Lawrence's mental, physical, and emotional conditions. The court found that there is no evidence of a disparity in education of the parties; and that the parties enjoyed a relatively high standard of living during the marriage. Further, the parties were found not to have any separate assets of significance, and that neither contributed to the education, training, or earning ability of the other. Ms. Lawrence was found to never have worked outside of the marriage and her future income is uncertain as the only income she derives is from the Fox Road *Page 18 
property, through caring for other people's animals and renting the facility for horse clinics.
 {¶ 65} On review of Mr. Sedivy's income, the court found that he has chosen to remain unemployed since the sale of GLHD in 2000, and that when he was employed, his income varied dramatically. In 1994, Mr. Sedivy stated his monthly income as approximately $14,000 a month on a mortgage application, but then for the same year, on his income tax return, he reported his annual income as $22,000. In 1999, Mr. Sedivy stated that he earned $390,000 per year or $32,500 per month. However, on the Sedivy's joint 1999 tax return, Mr. Sedivy's reported wages were $77,700 and he reported only $109,973.00 in total income. The court further found that Mr. Sedivy earned significant income during the marriage, and since the sale of GLHD, has used all of the funds from the sale to support both himself and Ms. Lawrence.
 {¶ 66} Mr. Sedivy also disagrees with the judgment entry of March 9, 2006 and March 31, 2006, both of which denied his motion to modify spousal support, except to the extent of the parties' agreement (adopted by the court in the March 31 judgment entry) whereby the parties agreed to cancel the Dish Network subscription. Mr. Sedivy claimed that the final order prohibited him from selling inventory which was to generate funds for the support, that his rental home remains vacant because of Ms. Lawrence's conduct, and that he does not have the sufficient income to pay such an amount. However, during the hearing on this motion on February 21, 2006, Mr. Sedivy testified that his monthly income has increased since the trial court issued its initial judgment entry granting the divorce on January 24, 2006. *Page 19 
 {¶ 67} Furthermore, in denying the motion to modify spousal support, the court found that nothing "has materially changed since the order was made." The court clarified the spousal support award, stating: "[t]he inventory was never envisioned by the Court as a source of funds to pay spousal support. The vacancy of the rental house is an occasional inevitability that happens from time to time and there was no showing that Plaintiff [Ms. Lawrence] caused, contributed to, or sabotaged any effort to re-rent. The rental, by itself, is not a great sum of money, in any event. Instead the spousal support order was in large measure a reflection on Defendant Robert A. Sedivy's earning capability. Defendant has perhaps misconstrued the Court's decision and concluded that the support ordered is based primarily on the fact that Mr. Sedivy has substantial assets from the sale of his motorcycle business. However, the spousal support award has much more to do with the Defendant's capability to make money. The Court doesn't accept that Defendant's employment capability is simply that of a glorified clerk who can only find part-time work. Therefore, the motion to modify is denied."
 {¶ 68} This review of the record demonstrates that the court reviewed all the statutory factors listed in R.C. § 3105.18(C)(1). There is evidence in the record to support the court's spousal support award and the court's denial of modification of the award.
 {¶ 69} We find appellant's fourth and fifth assignments of error to be without merit.
 {¶ 70} Cross-Appeal *Page 20 
 {¶ 71} Appellee timely appeals, raising the following five assignments of error on cross-appeal:
 {¶ 72} "[1.] The trial court erred in the valuation and disposition of 7429 Tyler Boulevard.
 {¶ 73} "[2.] The trial court erred in failing to divide the marital interest in 8215 Lakeshore Boulevard, Mentor, Ohio.
 {¶ 74} "[3.] The trial court erred in awarding only 55% of the net proceeds plus $15,000 for Robert Sedivy's financial misconduct.
 {¶ 75} "[4.] The trial court erred in failing to find that Cleveland Motorcycle Company, Inc. was a marital asset.
 {¶ 76} "[5.] The trial court erred in failing to find that some portion of 16555 and 16545 Auburn Road, Auburn Township, Ohio were [sic] a marital asset."
 {¶ 77} 7429 Tyler Boulevard
 {¶ 78} In her first assignment of error, Ms. Lawrence also argues that the trial court never valued 7429 Tyler Boulevard, and that the court failed to dispose of the property. Mr. Sedivy raised this issue as part of his first assignment of error, which we found to have merit. Thus, we reverse and remand on this issue. Accordingly, appellee's assignment of error is moot.
 {¶ 79} Specifically, we found above that the trial court failed to make a clear valuation and disposition of this marital property. In this way, the trial court abused its discretion.
 {¶ 80} "It is a well established rule in this district that findings of value must be made with respect to marital assets." Bates at 9, citing Crain v. Crain (Nov. 8, 1991), *Page 21 
Trumbull App. No. 90-T-4448, 1991 Ohio App. LEXIS 5353. This is so, since as a practical matter we cannot review the disposition of the property without specific findings. Id. at 10, citing Willis. Thus, "[a] trial court must provide specific, clear, and patent explanations of the basis for their property divisions. Omission of specific valuations of property and of the rationale behind their allocation to the individual party will lead an appellate court to find that the trial court had an insufficient basis for making its award. * * *" Id. at 9, citingBollas at 6.
 {¶ 81} Thus, we found the portion of Mr. Sedivy's first assignment of error dealing with the valuation and disposition of 7429 Tyler Boulevard to have merit. We reverse and remand on this issue for the trial court to make clear findings as to the sale and final distribution of this property. Accordingly, appellee's first assignment of error is moot.
 {¶ 82} The Disposition of 8215 Lakeshore Boulevard
 {¶ 83} In her second assignment of error, Ms. Lawrence argues that the court erred in failing to divide the marital interest in 8215 Lakeshore Boulevard, Mentor, Ohio. This property was owned by Mr. Robert Sedivy's son, Greg Sedivy. Greg Sedivy used this property as his residence. At one time, Mr. Robert Sedivy paid to have improvements made on the property in order to support GLHD when it tried to branch out into boating (doing business as Great Lakes Cycle Marine). Neither Greg Sedivy, nor Mr. Robert Sedivy's other son, Adam Kaplovitz, could assign a value to the property. Greg Sedivy testified that he paid $267,500 for the purchase. However, the court found Greg Sedivy less than credible regarding his income because neither his testimony, nor his tax returns were accurate, and they could not support the purchase of a property valued at this amount. The property was appraised in 1994 at $455,000. *Page 22 
Shortly before trial, Greg Sedivy sold the property and received $67,240.68 in net proceeds.
 {¶ 84} A reviewing court "should not review discrete aspects of the property division out of the context of the entire award." Baker v.Baker (1992), 83 Ohio App.3d 700, 701, citing Briganti v. Briganti
(1984), 9 Ohio St.3d 220, 222. Instead, "a reviewing court should consider whether the trial court's disposition of marital property as a whole resulted in a property division that was an abuse of discretion." Id. Thus, "a reviewing court may modify a property division only if it finds that the trial court abused its discretion in dividing the property as it did." Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
 {¶ 85} Mr. Sedivy's cavalier commingling of business and personal finances and paucity of independent documentation in this case made the trial court and this reviewing court's task extremely difficult. Troubling as it is, we find that there is evidence in the record to support the trial court's finding that this was Greg Sedivy's separate property, and as such, that the property was non-marital. There is also evidence to support the court's conclusion that the improvements Mr. Robert Sedivy built on the property in order to support his business were marital because the funds used for the improvements were marital. These improvements on Mr. Robert Sedivy's son's home, which were never reimbursed, contributed to the finding that he was guilty of financial misconduct. Accordingly, Ms. Lawrence was awarded a 55% share of the proceeds from the sale of the Fox Road property, and Mr. Robert Sedivy was ordered to pay $15,000 of Ms. Lawrence's attorney fees. Thus, the court properly considered this *Page 23 
factor in determining that Ms. Lawrence should be awarded more of the proceeds from the Fox Road property due to Mr. Sedivy's financial misconduct.
 {¶ 86} We find no abuse of discretion in this determination.
 {¶ 87} Appellee's second assignment of error lacks merit.
 {¶ 88} Financial Misconduct
 {¶ 89} In her third assignment of error, Ms. Lawrence argues that the court abused its discretion by awarding her an inadequate award for Mr. Sedivy's financial misconduct. However, we find no abuse of discretion in the trial court's determination. As we noted above in Mr. Sedivy's fourth assignment of error, which also challenged the financial misconduct award: A trial court enjoys broad discretion in deciding whether or not to compensate one spouse for the financial misconduct of the other. Hvamb at ¶ 14. R.C. § 3105.171(E) permits a trial court to make a distributive award to compensate one spouse for the financial misconduct of another. Financial misconduct includes the dissipation, concealment, destruction, or fraudulent disposition of assets. Id. The burden of proving financial misconduct is on the complaining spouse. Id. at ¶ 15, citing Gallo. "When determining whether to make a distributive award, the court must consider all the factors identified in R.C. 3105.171(F), and any other factors it deems relevant. The court must make specific written findings of fact to support its decision."Hvamb at ¶ 15.
 {¶ 90} A review of the record supports the trial court's findings, and we will not disturb this award without more. Ms. Lawrence will be awarded 10% more (55%) of the net proceeds from the Fox Road property once it is sold. Furthermore, Ms. Lawrence *Page 24 
was awarded $15,000 for attorneys fees as part of her compensation for Mr. Sedivy's financial misconduct. We find no abuse of discretion in this award.
 {¶ 91} Appellee's third assignment of error is without merit.
 {¶ 92} Cleveland Motorcycle Company, Inc.
 {¶ 93} In her fourth assignment of error, Ms. Lawrence argues that the trial court erred in finding that CMC was owned solely by Greg Sedivy, and thus is a non-marital asset. We agree, finding that the manifest weight of the evidence does not support the trial court's finding that CMC is solely Greg Sedivy's property.
 {¶ 94} As we noted above, trial courts have broad discretion over the division of property in divorce proceedings. Furthermore, the characterization of property as separate or marital is reviewed under a manifest weight of the evidence standard. Polakoff v. Polakoff (Aug. 4, 2000), 11th App. Dist. No. 98-T-0163, 2000-Ohio-App. LEXIS 3542, at 9, citing Kotkowski v. Kotkowski (Sept. 30, 1997), 11th Dist. No. 96-P-0238, 1997 Ohio App. LEXIS 4421, at 5. Thus, we will not reweigh the evidence introduced in trial court if the findings of the trial court are supported by competent and credible evidence. Id. at 10, citing Fletcher at 468.
 {¶ 95} However, we find there is no competent, credible evidence to support the court's conclusion. Thus, we find the court abused its discretion in categorizing this property as solely Greg Sedivy's.
 {¶ 96} Specifically, the magistrate found that Greg Sedivy incorporated CMC while he was an employee of GLHD in 1998. Greg Sedivy also testified to spending a great deal of time fixing up the commercial space at 7429 Tyler Boulevard, thus CMC did not commence operations until the spring of 1999. CMC leased the space from *Page 25 
GLHD for $2,000 a month, an amount that is noticeably less than the monthly mortgage payment of $3,907.
 {¶ 97} Mr. Sedivy testified that he guaranteed all of Greg Sedivy's loans, that he helped arrange insurance coverage, and that the same accountant for GLHD, Mr. Bohman, also did the accounting for CMC. The magistrate further found that when Mr. Sedivy's business started having financial problems in 1998, he utilized CMC's name to set up a separate account at Bank One, so that he could continue GLHD operations without the risk of liens and creditor suits against his assets. Greg Sedivy testified that he did not use this account for CMC until 2002, when it was "no longer needed or used by his father." All of the transactions on this CMC Bank One account were made by Mr. Sedivy until 2002.
 {¶ 98} The magistrate further found that Mr. Sedivy began borrowing funds from CMC as early as 1998. Two of the accounts, the Bank One account discussed above, and another Bank One account, which is a line of credit, were found to be "in the name of CMC, but which actually represented Mr. Sedivy's assets and liabilities." The magistrate found "[f]rom 1998 to the present, loans were taken from the Bank One Line of Credit in the name of CMC, but the loans were really Mr. Sedivy's debts, and the funds were used for his obligations. Mr. Bohman (Mr. Sedivy's accountant) explained that the account receivable balance due CMC on Defendant Exhibit F really represented Mr. Sedivy's obligation due on the Bank One Line of Credit in the name of CMC."
 {¶ 99} However, the magistrate ultimately concluded that "[t]he evidence and exhibits do not indicate that the Defendant, Greg Sedivy (corrected to read Robert), has any interest in the Cleveland Motorcycle Company, Inc. business which is owned and *Page 26 
operated by his son." The trial court adopted these findings in its January 24, 2006 judgment entry which granted the parties the divorce.
 {¶ 100} We find an abuse of discretion in the finding that CMC is solely Greg Sedivy's business. Specifically, the evidence in the record shows that Mr. Robert Sedivy (appellant) used CMC to hide his assets and used CMC funds for his personal use. The evidence shows that Mr. Sedivy was, indeed, acting as the owner and president of CMC. Mr. Sedivy signed the majority of the checks. Indeed, included in his signature was the word "President". By the own averments of Mr. Bohman, Mr. Sedivy, and Greg Sedivy, funds were used interchangeably between CMC and GLHD. In addition, the court cited competent, credible evidence in its conclusions that would seem to only support the finding that CMC was marital property. We are puzzled that the court would ultimately conclude otherwise in light of these written findings. The manifest weight of the evidence does not support this conclusion.
 {¶ 101} Appellee's fourth assignment of error is well taken.
 {¶ 102} We reverse, finding that the manifest weight of the evidence supports the finding that CMC, or at least a portion of CMC should be declared marital property. Thus, we remand to the trial court to determine what portion of CMC is marital property, and then to value and dispose of this marital property accordingly.
 {¶ 103} Auburn Road Township Properties
 {¶ 104} In her fifth assignment of error, Ms. Lawrence argues that the trial court erred in failing to find that some portion of the 16555 and 16545 Auburn Road properties are marital properties. *Page 27 
 {¶ 105} We reject this contention. Trial courts have broad discretion over the division of property in divorce proceedings. However, the characterization of property as separate or marital is reviewed under a manifest weight of the evidence standard. Polakoff at 9, citingKotkowski at 5. Thus, we will not reweigh the evidence introduced in court, but instead will uphold the findings of the trial court when the record contains some competent and credible evidence to sustain the trial court's conclusions. Id. at 10, citing Fletcher at 468. Moreover, "an appellate court will indulge all reasonable presumptions consistent with the record in favor of a lower court's decisions on questions of law." Id.
 {¶ 106} A review of the record reveals there is no evidence, competent or credible, that supports the conclusion that these properties have any indicia of ownership by either Mr. Sedivy, or owned with Ms. Lawrence, jointly. Rather, the evidence shows that Rudy Grecar is the owner and Debra Swetel is the tenant. Absolutely no evidence, direct or circumstantial, was introduced that Mr. Sedivy had any ownership in these properties.
 {¶ 107} The evidence does show that on a few occasions Mr. Sedivy was present at the properties and may have given advice on the construction of a building that was happening on the property at one point. There is also evidence that Mr. Sedivy knew Ms. Swetel from employing her at GLHD as a receptionist. Mr. Sedivy did store some of his mother's furniture in the barn. In addition, there was also some financial misconduct found between Mr. Sedivy and Ms. Swetel. Both testified that Mr. Sedivy gave Ms. Swetel some checks, which she deposited and then repaid with cash. While this may be viewed as money laundering, it does not evidence ownership of the real *Page 28 
property. Mr. Sedivy testified that he did not want to deposit these checks in his bank accounts because he needed the money immediately. However, Ms. Swetel did not give Mr. Sedivy the full amount of the checks he deposited. Indeed, this contributed to Mr. Sedivy's finding of financial misconduct. Thus, there is ample evidence in the record to support the court's conclusion that the Auburn Road properties were neither marital nor separate properties of either of the parties.
 {¶ 108} Appellee's fifth assignment of error to be without merit.
 {¶ 109} Thus, we reverse and remand. We remand to the trial court to determine the valuation and disposition of 7429 Tyler Boulevard and to determine whether all of CMC is marital property, or if some portion is indeed, Greg Sedivy's. The trial court must then value and dispose of the portion which is marital property accordingly.
 {¶ 110} The judgment of the trial court is affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., DIANE V. GRENDELL, J., concur.
[1] Debra Swetel was a lessee of the property located at 16555 Auburn Road, Auburn, Ohio, which is owned by Rudy Grecar and which Ms. Lawrence claimed her husband had some ownership interest.
[2] The jurisdictional issues raised by the fifth assignment of error were resolved in our judgment entry of July 5, 2006, where we found service of the March 9, 2006 and March 31, 2006 judgments were not made upon the parties until April 21, 2006. Accordingly, we found appellant's appeal to be premature. Thus, this assignment of error now deals only with the appropriateness of the spousal support award. *Page 1