[Cite as *Marshall v. Marshall*, 2016-Ohio-3405.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT MARSHALL, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-P-0073** |
| KARIN MARSHALL, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2014 DR 00312.

Judgment: Affirmed.

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (For Plaintiff-Appellant).

*Karin Marshall,* pro se, 643 W. Warren Ave., Youngstown, OH 44115 (Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Robert Marshall, appeals from the Judgment Entry of the Portage County Court of Common Pleas, Domestic Relations Division, granting Robert and defendant-appellee, Karin Marshall, a divorce and setting forth orders related to the disposition of property. The issues to be determined by this court are whether it is an abuse of discretion when an appellant is not awarded compensation for property that he failed to retrieve from the marital residence, whether a larger award is

warranted when one party violates a restraining order, and whether an award for money invested in a home is proper when it was foreclosed and there is no evidence of remaining equity. For the foregoing reasons, the judgment of the lower court is affirmed.

**{¶2}** On July 23, 2014, Robert filed a Complaint for Divorce.

**{¶3}** On July 24, 2014, the court filed a Mutual Temporary Restraining Order, preventing either party from selling, destroying, or removing property or assets, as well as withdrawing or spending funds on deposit in a financial institution, except from checking accounts used to pay ordinary household living expenses.

**{¶4}** Karin filed an Answer and Countercomplaint for Divorce on December 29, 2014.

**{¶5}** On September 14, 2015, the divorce was tried before the judge, with Karin proceeding pro se.

**{¶6}** Karin testified that she and Robert were married in April 1998, but had purchased a home on Udall Road in Hiram, Ohio, in August 1997. When the two separated in January 2011, Karin remained in the residence. The home was foreclosed in 2014. Karin could not recall the price for which it had been purchased or the appraisal value. Karin admitted that she stopped paying the mortgage in May 2011. She moved out of the home in April 2015, when it was sold at a sheriff's auction.

**{¶7}** Karin sent an e-mail to Robert's attorney after the house had sold, telling him he needed to pick up his personal property, but he made no attempt to retrieve it. She did not remove any property, pursuant to the restraining order, after Robert filed for divorce.

2

{¶8} Karin also testified that a 1971 Buick Skylark, which had been in Robert's possession prior to their marriage, had not been driven since 1997 or 1998, when it was placed in their barn at the Udall residence. She explained that it was leaking gas and other fluids, and rats were living in it. In 2012, a man offered to tow it for free, to which she agreed. She believed it had posed a hazard in its condition.

{¶9} Robert A. Marshall, Robert's adult son, testified that the Skylark had been in the barn as long as he could remember, but he did not recall seeing damage to it or rust.

{¶10} Robert E. Marshall, appellant, testified that in January 2011, an "incident" between Robert and Karin occurred and there was a "court-ordered separation." He had not returned to the house since that time, pursuant to a protection order. Robert initially purchased the house in 1997 for $95,500, making the down payment of $40,000. He and Karin were married in 1998. They refinanced the house in 1998 or '99 for approximately $123,000. When the two declared bankruptcy in 2009, the house was valued at $142,000.

{¶11} Robert testified that the Skylark was a "collector car," which he worked on as a hobby. It had been in the barn, sitting on tarps on the dirt floor, since 2000 and had been drained of gas and other fluids while stored there. The car was purchased with $2,000 in cash and the trade of another vehicle. He admitted that a purchase price of $50 was put on the title "for tax purposes." Based on his research, he believed the value of the car was $10,000 to $15,000, although it needed some work to reach that value. He had not seen the car since 2010.

{¶12} Robert testified that he had personal property at the home, including tools, car related items, music equipment, and other property. He provided a list with approximate values. Some of the tools were over ten years old. He had not seen this property since 2011.

{¶13} A Judgment Entry Decree of Divorce was issued by the trial court on October 6, 2015, granting the divorce. Regarding Robert's personal property, the court found that "although [he] may have lost many of his personal property items and personal effects, he did not take reasonable measures to obtain or safeguard those items" and found no merit in the request that Karin compensate him for personal property or household belongings.

{¶14} As to the Buick Skylark, the court noted Robert's testimony that the title reflected a purchase price of $50, as well as the conflicting testimony of the parties regarding the car's value. The court concluded that Robert "failed to present sufficient and/or credible evidence as to the value of the Skylark," had not worked on the car for approximately 15 years, and failed to "take reasonable measures to secure possession of the motor vehicle or otherwise protect his ownership interest in it."

{¶15} Regarding Robert's contention that he had a separate property claim for the equity in the marital residence, the court found that he failed to present any evidence that equity existed at the time of foreclosure and he did not take actions to protect his equity.

{¶16} Regarding Robert's checking and savings account, the court noted that he had spent $4,246 from the $11,000 total he had at the time he filed his complaint for

divorce. The court found this violated the Mutual Restraining Order and awarded $6,754 to Karin as "a full and final property settlement."

**{¶17}** Robert timely appeals and raises the following assignment of error:

**{¶18}** "The trial court erred and abused its discretion in dividing the marital property at the time of the divorce."

**{¶19}** A domestic relations court's division of property in a divorce proceeding is reviewed under an abuse of discretion standard. *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981); *Hutchison v. Hutchison*, 11th Dist. Lake No. 2014-L-048, 2014-Ohio-5471, ¶ 14.

**{¶20}** Robert raises several issues related to the disposition of the property. First, he contends that the trial court abused its discretion by failing to compensate him for the loss of his 1971 Buick Skylark.

**{¶21}** It is evident from the testimony that Karin disposed of the vehicle in 2012, while she was living at the home and after the two had separated. The court found that Robert did not take reasonable measures to secure possession of the vehicle and failed to present sufficient/credible evidence of its value. We find no abuse of discretion in this decision.

**{¶22}** Testimony from both Robert and Karin demonstrated that Robert had not driven the car for many years. They presented conflicting testimony as to the car's value. Karin believed it lacked value, especially given its poor condition, and interior damage from rats. Robert, on the other hand, personally believed the car could be worth around $10,000 to $15,000 if certain work was performed. The court found that Robert's statement of the value lacked credibility. It was also unsupported by any other

5

evidence that would lend it credibility. Robert would have the court rely solely on his own opinion of the car's value when it was possibly damaged, its condition was unclear, it had been left in the garage for years undriven, and in spite of the $50 purchase price on the title. Based on these facts, it was proper for the court to conclude the car lacked any significant value requiring compensation.

**{¶23}** Robert contends Karin lacked credibility, pointing out that her testimony regarding the leaking fluids is suspect, since the car could not be continuously leaking gas for several years. Karin's testimony in general related to the poor condition of the car, which the lower court chose to believe. Further, while Robert contends that he is permitted to give testimony to the car's value as the owner, it does not follow that the trial court was required to believe or accept that testimony. As the Judgment Entry explained, the trial court found Robert's evidence, i.e., his testimony, to be lacking credibility. "[T]he trial court, or magistrate, is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections in order to assess their credibility and weigh the testimony." (Citations omitted.) *Miller v. Miller*, 11th Dist. Trumbull No. 2008-T-0105, 2009-Ohio-4258, ¶ 34; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trial court was within its discretion to choose not to believe Robert's estimate. *Donnelly v. Donnelly*, 2d Dist. Greene No. 2002-CA-53, 2003-Ohio-1377, ¶ 63 (where the husband and wife gave two different values for property, it was for the finder of fact to determine which testimony was credible).

**{¶24}** Robert next argues that the trial court abused its discretion for failing to award his separate property claim with regard to the marital residence.

6

**{¶25}** The marital residence was foreclosed upon in 2014 and sold at a sheriff's sale in 2015 for $92,000. While it may be the case that Robert paid a substantial down payment on the home when he purchased it just prior to the parties' marriage, we find no abuse of discretion in the court's decision not to require Karin to compensate Robert for this amount.

**{¶26}** While Robert was not permitted to live in the residence from 2011 until the foreclosure, this was apparently due to a civil protection order. This order did not prevent him from making payments on the house to prevent foreclosure and maintain his equity. He also had the option of filing for divorce several years earlier to obtain a property judgment that would have protected his interest in the home. Waiting until the property was foreclosed upon and then seeking judgment for the equity value, which apparently no longer exists, is not a workable or equitable solution in this matter.

**{¶27}** Generally, "[i]f, at the end of a marriage, 'property then no longer exists, it cannot be divided as marital property or awarded as separate property pursuant to R.C. 3105.171 in a decree of divorce.'" *Hood v. Hood*, 10th Dist. Franklin No. 10AP-999, 2011-Ohio-3704, ¶ 22, quoting *Wertz v. Wertz*, 2d Dist. Montgomery No. 19520, 2003-Ohio-3782, ¶ 17; *compare Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 21 (where the property was under a greater mortgage encumbrance at present than it was at the beginning of the marriage, the wife could not recover for appreciation or money contributed for mortgage payments). In this case, it appears that no equity existed in the home or that none was proven. Pursuant to an April 23, 2015 Judgment Entry Confirming Sale and Ordering Distribution in the foreclosure case, the property was sold for $92,000. After the proceeds were distributed for taxes and other

7

costs, the remaining proceeds were ordered to pay the balance of the mortgage debt. The only evidence in the record indicates that there was nothing left to distribute to either party. Even if the property had been sold at the higher, appraised value, the evidence presented does not show the amount that was still owed on the mortgage.

{¶28} While Robert argues that the court did not allow him, in a separate matter, to move back in, the record of those proceedings is not before this court. A copy of a 2013 Judgment Entry from that matter entered into evidence indicates that the court found he did not present evidence to contest Karin's right to continue to live in the residence. Any error in that decision is not properly before this court.

{¶29} Robert also argues that the trial court abused its discretion by failing to award him compensation for his personal belongings, which Karin no longer has in her possession.

{¶30} There is no dispute that Robert had personal property located at the parties' marital residence. The trial court found that Robert neither proved the value of this property nor took action to retrieve any remaining property prior to the sale of the home and move-in of the purchasers. We do not find this determination to be an abuse of discretion.

{¶31} Robert left the home in 2011 and was not permitted to return due to protection orders arising from domestic violence charges. He did not take action to file for divorce until 2014. Although Karin e-mailed Robert's counsel requesting that Robert remove his property before the new owners took possession of the home, no action was taken to retrieve it. While Robert states there was no way he could have retrieved his property at that time, it is possible he could have filed an emergency request in the

8

court, or possibly had the property picked up by a third party. Under Robert's analysis, Karin would be responsible for transporting and caring for his property after the foreclosure sale, which is an untenable position.

{¶32} The fact that a protection order was put into place making it more difficult for Robert to retrieve his possessions cannot be blamed on Karin, nor should she now be held financially responsible for personal property that there is no evidence she disposed of or otherwise destroyed. It is also noteworthy that Karin testified she believed Robert may have been removing items from the barn while she was at work. This, combined with a lack of credible value demonstrated by Robert, justified the lower court's decision. *See Donnelly*, 2003-Ohio-1377, at ¶ 66 (where there was testimony that the appellant, who was subject to a restraining order, had entered the home to retrieve property, and that the property being sought was no longer available, the court did not abuse its discretion in failing to award the compensation requested); *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 54 (no evidence was presented that the civil protection order prohibited the appellant from being able to retrieve personal property).

{¶33} Finally, Robert contends that the trial court abused its discretion by awarding a sum of $6,754 to Karin as a full and final property settlement.

{¶34} The lower court's award of this amount was based on its finding that Robert's testimony was "an admission of violating this Court's Mutual Restraining Order." This amounts to a finding that he committed financial misconduct under R.C. 3105.171(E)(4).

9

**{¶35}** R.C. 3105.171(E)(4) provides: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." "A trial court enjoys broad discretion in deciding whether or not to compensate one spouse for the financial misconduct of the other." *Sedivy v. Sedivy*, 11th Dist. Geauga Nos. 2006-G-2687 and 2006-G-2702, 2007-Ohio-2313, ¶ 89.

**{¶36}** In the present matter, there was a mutual restraining order preventing either party from spending funds from their accounts on non-household expenses. Robert admitted that he had spent almost half of the amount of money in his accounts, approximately $4,200, which the court found to be a direct violation of its restraining order. As provided by R.C. 3105.171(E)(4), the court was permitted to give a greater award of property to Karin because of this misconduct.

**{¶37}** In his brief, Robert does not contest violating the restraining order. Instead, he argues that the amount awarded to Karin was unfair because it constituted over half of the funds in his account. The amount awarded to her, $6,754, was approximately 60% of the $11,000 Robert had at the time of the restraining order. We do not find this award to be an abuse of discretion. As noted above, the court is permitted to compensate a spouse for improper use of funds. *Worrell v. Worrell*, 10th Dist. Franklin No. 06AP-1147, 2008 Ohio App. LEXIS 767, 13 (Mar. 4, 2008) ("we can find no abuse of discretion in the court awarding appellee a greater share of the assets to offset appellant's financial misconduct and failure to comply with the court's temporary orders"). We decline to second-guess the court's determination.

10

{¶38} Robert also takes issue with the lack of inquiry into Karin's funds on deposit or financial status. Robert points to no testimony establishing money Karin had that he would be entitled to, nor does he show that she violated the restraining order. In the absence of such an argument, we find no abuse of discretion.

{¶39} The sole assignment of error is without merit.

{¶40} For the foregoing reasons, the Judgment Entry of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs to be taxed against appellant.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.